IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEREK THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-1005-N-BN |
| | § | |
| JEH JOHNSON, Secretary, | § | |
| Department of Homeland Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the United States District Judge David C. Godbey. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Federal Rule of Civil Procedure 12(b)(6) motion to dismiss filed by Defendant Jeh Johnson, Secretary of the Department of Homeland Security ("DHS") [Dkt. No. 7], should be granted and Plaintiff's claims should be dismissed with prejudice.

### Background

Prior to this action, Plaintiff Derek Thomas sued Janet Napolitano, then the DHS Secretary, on February 10, 2010, alleging discrimination based on race, sex, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and perceived disability under the Rehabilitation Act, 29 U.S.C. § 12101, *et seq. See Thomas v. Napolitano*, No. 3:10-cv-265-B (N.D. Tex.). This Court, following a three-day bench trial in November 2012, found Plaintiff's

claims to be unproven by a preponderance of the evidence and dismissed them on the merits. *See id.*, Dkt. No. 110. The United States Court of Appeals for the Fifth Circuit affirmed. *See Thomas v. Napolitano*, 542 F. App'x 317 (5th Cir. 2013).

On April 1, 2015, Plaintiff filed his *pro se* complaint against Defendant Johnson, the current DHS Secretary. And Defendant moved to dismiss on June 5, 2015. *See* Dkt. No. 7.

Through his current complaint, Plaintiff, an African-American man, informs the Court that he was diagnosed with diabetes in 2007 and is an employee of the Federal Air Marshall Service ("FAMS"), in the Dallas Field Office of the Transportation Security Administration ("TSA"), an agency within DHS. *See* Dkt. No. 3 at 3. Plaintiff alleges that he has 20 years of law enforcement experience and has worked for FAMS since 2002. *See id.* at 4.

Plaintiff contends that, on February 22, 2011, he was issued a "Letter of Counsel" ("LOC") during an ice storm event due to tardiness. *See id.* He claims that the letter that he received looked physically different from a normal LOC. *See id.* Plaintiff alleges that the usual procedure required for an LOC to be assigned to an employee entails that, first, an Incident Tracking Report ("ITR") be sent to headquarters, as was done in this case. *See id.* But, prior to sending the ITR to headquarters, the Assistant Supervisory Air Marshal in Charge or Supervisory Air Marshal in Charge must approve the ITR. *See id.* Plaintiff contends that, in his case, no such approval was given before the ITR was sent to headquarters. *See id.* Plaintiff pursued available administrative grievances to no avail, as outlined below.

As recounted in the Fifth Circuit's decision, *see Thomas*, 542 F. App'x at 318, in 2008, after Plaintiff's diabetes diagnosis, the FAMS Medical Unit evaluated Plaintiff's condition and placed him on light-duty assignment. At this point in time, Plaintiff alleges that he was forced to use 192 hours of annual leave and over 88 hours of sick leave, which were never replaced. Plaintiff complained of a hostile work environment to the Office of Civil Rights and Liberties in July 2008 on the basis of his disability (diabetes), reprisal, and sex (male). TSA accepted these issues for investigation in October 2008. In October 2009, Plaintiff was not promoted to Senior FAM due to his below-average Quarterly Fitness Assessments ("QFA") and Practical Pistol Course ("PPC"). Subsequently, his flight schedule was altered on two separate occasions without notice. Plaintiff then filed two additional Equal Employment Opportunity ("EEO") complaints on the basis of discrimination (race) and reprisal. TSA accepted these issues for investigation in May 2010 and February 2011. Plaintiff then sued, resulting in his previous litigation in this Court and, now, the instant case.

As part of his claims in this case, Plaintiff claims that the Equal Employment Opportunity Commission ("EEOC") misinterpreted applicable law by not accepting, as proof of discrimination, examples of persons similarly situated who did not receive an LOC. *See* Dkt. No. 3 at 7. Plaintiff further alleges that he was the only one to receive an LOC for "missing his flight mission" during an ice storm, though many others similarly arrived late. *See id.* at 6. And Plaintiff believes that, because of the Administrative Law Judge's unwillingness to receive this proof, he did not receive a

fair and unbiased hearing. *See id.* at 9.[1]

Finally, Plaintiff asserts that he has suffered from retaliation and a hostile work environment. *See id.* at 11. Plaintiff alleges that, following DHS's attempt to forcibly retire him due to his diabetes diagnosis in 2007, he has endured instances of retaliation. *See id.* Plaintiff alleges that he was forced by Defendant to use more than 300 hours of "leave time" that the Defendant has not since restored. *See id.* at 12.

Plaintiff claims that the facts presented in his complaint set out a plausible claim that he has been discriminated against, as a member of a protected class, and retaliated against as a result of his participation in an investigation regarding an unlawful discriminatory practice. *See id.* at 12. Plaintiff claims that Defendant failed to restore certain leave hours on the basis of discrimination (disability) and retaliation (due to his participation in EEO investigations). *See id.* Further, Plaintiff alleges that he received an LOC, while his white colleagues did not, due to discrimination (race) and retaliation (for EEO participation). *See id.*

The undersigned now concludes that Defendant's motion to dismiss should be granted for the reasons explained below.

---

[1] But, since filing his complaint, Plaintiff has clarified that "in no way" is he "claiming that his Title VII rights were violated" during the administrative process leading up to him filing a complaint in federal court. Dkt. No. 10 at 9. But, to the extent that he was asserting such a claim, it should be dismissed. *See Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002) ("Title VII does not confer on a charging party a right of action against the EEOC. Therefore it was proper for the district court to dismiss Newsome's Title VII claims." (citing *Gibson v. Missouri Pac. R.R.*, 579 F.2d 890, 891 (5th Cir. 1978) ("Title VII ... confers no right of action against the enforcement agency."))).

**Legal Standards**

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Rule 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss[,]" under *Twombly* and *Iqbal*, a plaintiff need only

"plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Zephyr Aviation, LLC v. Dailey,* 247 F.3d 565, 573 (5th Cir. 2001) (dismissal for failure to state a claim is generally disfavored in the Fifth Circuit).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *See Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). But the pleadings in this context include attachments to the complaint. *See Katrina*, 495 F.3d at 205; *see also Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (per curiam) ("It is well established that, in deciding whether to grant a motion to dismiss, a district court may not go outside the complaint.").

Further, "[b]ecause Plaintiff is proceeding *pro se*, the Court liberally construes his Complaint with all possible deference." *Muthukumar v. Univ. of Tex. at Dallas*, No. 3:10-cv-115-B, 2010 WL 5287530, at *2 (N.D. Tex. Dec. 27, 2010) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Jackson v. Roche*, Nos. 7:04-cv-0133-O & 7:02-cv-0111-R, 2008 WL 2579677, at *4 (N.D. Tex. June 27, 2008) ("Because Plaintiff filed his complaint as a *pro se* litigant, this Court is obligated to construe the complaint liberally." (citations omitted)). *But see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("Although the Court and the parties should liberally construe *pro se* pleadings, such a liberal construction does not

require that the Court or a defendant create causes of action where there are none."
(footnote omitted)).

While *pro se* status does not provide "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets," *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986), it is settled law that "*pro se* pleadings must be liberally construed to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704cv123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). And "a *pro se* plaintiff ordinarily should be given 'every opportunity' to state a possible claim for relief." *Muthukumar*, 2010 WL 5287530, at *2 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1998)). "Thus, before a court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, a *pro se* plaintiff should be given an opportunity to amend," *id.* (citing *Barowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)), unless such an opportunity would be futile.

### Analysis

<u>Plaintiff's Leave Restoration</u>

Plaintiff's leave restoration claim should be dismissed pursuant to claim preclusion, or *res judicata*, the legal principle that allows for finality of judgments and ensures that courts reserve judicial resources by prohibiting multiple lawsuits on the same issue. *See Procter & Gamble Co. v. Amway Corp.,* 376 F.3d 496, 499 (5th Cir. 2004).

*Res judicata* applies where "(1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). If these conditions are satisfied, all claims or defenses arising from a "common nucleus of operative facts" are merged or extinguished. *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663 (5th Cir. 1994).

*Id.*

Here, the parties in this case and in Plaintiff's prior case in this Court, *Thomas v. Napolitano*, are in privity, as both Defendants (Napolitano and Johnson) were sued in their capacity as DHS Secretary. The prior case was tried to final judgment in this Court, and that judgment was appealed to, and affirmed by, the Fifth Circuit.

Therefore, in order to dismiss the issue of restoration of Plaintiff's leave, the only element left to analyze is that the same claim or cause of action was involved in both suits. Following Fifth Circuit precedent, the Court applies the "transactional test" to determine whether Plaintiff's claims arise from the same transaction or series of transactions. To determine what is considered a "transaction," the Court must evaluate whether the facts are connected in "time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 313 (5th Cir. 2004) (quoting *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395-96 (5th Cir. 2004) (in turn quoting RESTATEMENT SECOND OF JUDGMENTS § 24 (1) (1982))). Of critical importance under the transactional test is whether the two issues are centered around the "same nucleus of operative facts." *Id.*

-8-

(internal quotation marks and citation omitted). "Thus, [a court] must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts." *Id.*; *see also In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).

An exception to the bar on related claims applies where a wrong occurs subsequent to the first lawsuit. In that case, "[a] Title VII plaintiff," for example, "is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent than the prior lawsuit." *Davis*, 383 F.3d at 314 (quoting *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir. 1997)).

Plaintiff does not satisfy the exception to this rule for the following reasons. Plaintiff's first claim addresses restoration of leave time due to his diabetes diagnosis in 2007. Plaintiff's complaint provides that "[DHS] attempted to forcibly retire him against his will due to his diagnosis of diabetes in 2007" and that, due to his prior EEO activity, he "has been subjected to many instances of dubious investigations, and/or excessive discipline since 2007." Dkt. No. 3 at 11. Plaintiff does not present any new issue that could not have been litigated in the prior trial. Furthermore, Plaintiff has not lost any new leave hours since the case was litigated in 2013. In *Thomas v. Napolitano*, Plaintiff claimed that his leave time was not restored due to a "discriminatory attitude" based on his "disability (diabetes), reprisal, and sex (male)." 542 F. App'x at 318. But the Fifth Circuit found no discrimination on the basis of these events. *See id.* at 320.

Plaintiff also alleges that Defendant's failure to restore certain leave hours

demonstrates retaliation on the part of the Defendant due to Plaintiff's involvement in EEO investigations (which led to forced retirement and demotions of prior DFO senior management). This issue has been fully litigated and adjudicated on the merits. *See* 542 F. App'x 317. Thomas complained of a "discriminatory attitude" on the part of his employers in failing to restore his "sick and annual-leave time" on the basis of his "disability (diabetes), reprisal, and sex (male)." *Id.* at 318. All of these issues were brought forth in July 2008 and dismissed on the merits. *See id.*

For these reasons, Plaintiff's claim does not fall under the "subsequent action" exception to the bar to *res judicata* and, further, all four elements of *res judicata* – as to both the retaliation and discrimination claims – are satisfied. Therefore, the first issue of failure to restore leave time should be dismissed with prejudice.

The LOC Received by Plaintiff

Plaintiff's claims of a hostile work environment and discrimination (on the basis of race) due to his receipt of an LOC also should be dismissed with prejudice.

While "[a] plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment," a plaintiff must prove, among other things, that "the harassment complained of was based on race" and that "the harassment complained of affected a term, condition, or privilege of employment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). To meet this second required element, the alleged harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21

(1993)). Factors considered to determine whether an environment is hostile include "'frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Fortenberry v. Texas*, 75 F. App'x 924, 928 (5th Cir. 2003) (per curiam) (quoting *Harris*, 510 U.S. at 23); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment.")). The LOC that Plaintiff received does not satisfy these requirements.

First, the Fifth Circuit has held that the receipt of a letter of counseling, alone, is not an adverse employment action. *See Green v. West*, 194 F.3d 1309, 1999 WL 767441, at *1 (5th Cir. 1999) (per curiam) ("Under this court's precedent, only ultimate employment decisions can qualify as adverse employment actions. *See Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Threats, reprimands, and warnings, because they do not constitute ultimate decisions, do not suffice as adverse employment actions. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997). Green's only concrete allegation of discrimination is the letter for counseling. This plainly does not constitute an adverse employment action under *Dollis* or *Mattern*." (internal citation modified)); *see also Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 95 (D.D.C. 2012) (issuance of "a letter of counseling" is an allegation that does "not come close to portraying a workplace that is 'permeated with discriminatory intimidation, ridicule and insult,' nor do[es it] effectively amount to a 'change in the terms and conditions of employment'" (quoting *Harris*, 510 U.S. at 21, and then granting defendant's motion

to dismiss because plaintiff did not state a *prima facie* case of hostile work environment)).

Examining the LOC under the factors in *Harris*, Plaintiff concedes that the LOC does not by itself carry much weight. *See* Dkt. No. 3 at 14 ("All discipline and Letter of Counsel within the FAMS are cumulative, and used to support harsher subsequent discipline."). Plaintiff's receipt of such a letter was not adverse in nature and did not interfere with his work. Rather, it was added to his file to be examined if later work performance issues were to arise. Indeed, Plaintiff's LOC reads "[t]his letter is not a disciplinary action" and continues on that the purpose of the letter is so that Plaintiff knows what is expected of him. Dkt. No. 10 at 15.

The receipt of the LOC also cannot be the basis for a claim of retaliation. In the absence of direct evidence of retaliation, "[t]o establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). The LOC cannot be considered an adverse employment action in the context of a claim for retaliation. *See Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013) (per curiam) ("[T]he Letter of Counseling was not an adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (letter of counseling, letter of reprimand, and unsatisfactory performance review were not adverse actions); *DeHart v. Baker Hughes* Oilfield Operations, Inc., 214 F. App'x 437, 442 (5th Cir. 2007) (single written warning

insufficient to dissuade reasonable employee from reporting discrimination).").

## Recommendation

The Court should grant Defendant's motion to dismiss [Dkt. No. 7] and dismiss Plaintiff's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 7, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE